IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

RICKY LEE STEWARD, III

    Petitioner,

v.                                                                                                         No. 13-1287

UNITED STATES OF AMERICA,

    Respondent.
_____

ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH, AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL
_____

Before the Court is the *pro se* 28 U.S.C. § 2255 ("§ 2255") motion of Petitioner, Ricky Lee Steward, III, to vacate, set aside, or correct his sentence (the "Petition") filed on October 21, 2013. (Docket Entry ("D.E") 1.) Steward, Bureau of Prisons ("BOP") register number 01049-027, is currently housed at the United States Penitentiary ("USP") Coleman 1 in Coleman, Florida. The United States has filed an answer to which Petitioner replied. (D.E. 10, 11.) For the reasons below, the Petition is DENIED.

### I.     Background

*A. Case Number 10-10029*

On March 15, 2010, the grand jury returned an indictment charging Steward with one count of aiding and abetting in the attempted robbery of a Save-A-Lot grocery store, a business engaged in interstate commerce, in violation of 18 U.S.C. §§ 1951 and 1952, one count of knowingly using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1) and 924(c)(2), one count of first degree

1

murder, as defined in 18 U.S.C. § 1111(a), in violation of 18 U.S.C. § 924(j)(1), and one count of knowingly possessing and receiving a firearm—having been previously convicted of a crime punishable by imprisonment for a term exceeding one year—in violation of 18 U.S.C. § 922(g). Redacted Indictment, *United States v. Stewart*, No. 10-10029 (W.D. Tenn. Mar. 15, 2010) (D.E. 2).[1] Attorneys Michael J. Stengel and Arthur E. Quinn were appointed to represent Petitioner. CJA Appointment, *id.* (D.E. 21, 22.)

On October 4, 2011, Steward pleaded guilty to all four counts of the indictment based on a plea agreement reached pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Min. Entry, *id.* (D.E 126.) In his plea agreement, Petitioner waived his right to appeal his sentence. Plea Agreement, *id.* (D.E. 127.) The Court imposed a sentence of life imprisonment on Count Three, a twenty year sentence on Count One to run concurrent with Counts Three and Four, a ten year sentence on Count Four to run concurrent with Counts One and Three, and a ten year sentence on Count Two to run consecutive to Counts One, Three, and Five. Petitioner did not appeal this judgment.

*B. Case Number 13-1287*

On October 21, 2013, Petitioner moved to vacate, set aside, or correct his sentence pursuant to § 2255. (D.E. 1.) He asserted violations of his right to receive a fair trial in accordance with the Sixth and Fourteenth Amendments based on ineffective assistance of counsel and also contended that his guilty plea was entered involuntarily. (*Id.*; D.E. 1-1.) The Government filed its response in opposition on June 27, 2014, to which Steward replied on July 17, 2014. (D.E. 10, 11.)

---

[1] The criminal case against Petitioner spelled his last name as "Stewart," but the inmate listed his name as "Steward" on his Petition. For the purposes of his 2255 motion, the Court will utilize Petitioner's spelling.

## II. Legal Standard

Section 2255(a) provides,

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a) (2015). In order to succeed on a motion under the statute, a petitioner must show "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Shaw v. United States*, 604 F. App'x 473, 476 (6th Cir. 2015) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001), *cert. denied*, 135 S. Ct. 2194 (2015)). Sentencing challenges generally cannot be made for the first time in a post-conviction § 2255 motion but must be presented on direct appeal, or they are waived. *Weinberger*, 268 F.3d at 351; *see McCullough v. United States*, No. 12-1214, 2015 WL 1651270, at *2 (W.D. Tenn. Apr. 14, 2015).

An evidentiary hearing is not required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or mere conclusions rather than statements of fact. *See Amr v. United States*, 280 Fed. App'x 480, 485, (6th Cir. 2008); *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007). The petitioner bears the burden of pleading and articulating sufficient facts to state a viable claim for post-conviction relief under § 2255, and a § 2255 motion may be dismissed if it only includes vague conclusory statements without allegations of specific facts. *Ryals v. United States*, No. 1:05-cv-238, 2009

WL 595984, *5 (E.D. Tenn. March 6, 2009); *Stamper v. United States*, No. 1:05-cv-317, 2008 WL 2811902, * 1 (E.D. Tenn. July 18, 2008).

### III.   Analysis of Petitioner's Claims

Steward asserts that he received ineffective assistance of counsel. (D.E. 1; 1-1.) Specifically, he contends that counsel was ineffective for failing to: (1) challenge the indictment against him, (2) appropriately research and create a defense strategy prior to the plea agreement, (3) object during the plea colloquy after Petitioner said he did not know the answer to a question, (4) request a suppression hearing based on the ambiguous indictment, (5) and investigate possible incompetence. (D.E. 1 at 5-12; D.E. 1-1 at 1-3.) Petitioner also claims that his counsel acted in bad faith and that his guilty plea was made involuntarily. (D.E. 1-1 at 2-3.) In its response, the Government avers the claims are meritless and that Petitioner waived his right to appeal pursuant to 28 U.S.C. § 3742 or 28 U.S.C. § 2255.[2] (D.E. 10 at 9.)

It is well-established "that a defendant's informed and voluntary waiver of the right to collaterally attack a sentence in a plea agreement bars such relief." *Watson v. United States*, 165 F.3 486, 489 (6th Cir. 1999); *see Jones v. United States*, 120 F. App'x 594, 596 (6th Cir. 2005); *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001). If a defendant seeks to challenge the

---

[2]The Government also contends that the filing of the Petition was untimely. AEDPA "establishes that state and federal prisoners have a one-year limitations period in which to file a habeas corpus petition." *Johnson v. United States*, 457 F. App'x 462, 464 (6th Cir. 2012). A conviction generally becomes final upon the conclusion of direct review, and "when a federal criminal defendant does not appeal to the court of appeals, the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals, even when no notice of appeal was field." *Id.* Steward was sentenced on October 4, 2012. Judgment, *United States v. Stewart*, No. 10-10029 (W.D. Tenn. Oct. 4, 2012) (D.E. 183). Pursuant to Federal Rule of Appellate Procedure 4(b)(1)(A), Petitioner had 14 days to appeal his sentence. Accordingly, the one-year limitations period began on October 18, 2012. Steward's Petition was received on October 13, 2013 (D.E. 1), which was within the one year time limit. Thus, the Petition was timely filed.

4

voluntariness and intelligence of a guilty plea on collateral review, the issue must first have been presented on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 620 (1998) ("the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"); *see also Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999) ("Petitioner's failure to challenge the validity of his plea on direct appeal causes his claim to be procedurally defaulted.").

The Respondent correctly noted that Petitioner waived his right to file a § 2255 with limited exceptions. The plea agreement entered into between Steward and the Government provided that

> Ricky Stewar[d] will not appeal his guilty plea or the sentence. Ricky Stewar[d] understands that, pursuant to 18 U.S.C. § 3742(a), he has the right to appeal the sentence imposed. Ricky Stewar[d] recognizes that his right to appeal the sentence imposed herein will be limited by 18 U.S.C. § 3742(c) because this is a plea agreement reached pursuant to Fed. R. Civ. P. 11(c)(1)(C). However, acknowledging this limited statutory right, Ricky Stewar[d] knowingly and voluntarily waives his right to contest or appeal, pursuant to 18 U.S.C. § 3742 or 28 U.S.C. § 2255, the sentence imposed by the Court pursuant to this Rule 11(c)(1)(C) agreement. This waiver is made in exchange for the concessions made by the prosecuting authorities in this plea agreement. The parties jointly request that the Court find this waiver provision is knowingly and voluntarily agreed upon prior to accepting Ricky Stewar[d]'s guilty plea. The waiver in this paragraph *does not apply* to claims of prosecutorial misconduct or the ineffective assistance of counsel.

Plea Agreement, *United States v. Stewart*, No. 10-10029 (W.D. Tenn. Oct. 4, 2011) (D.E. 127) (emphasis added). A colloquy was conducted, and after Petitioner was questioned about the voluntariness of the plea, the Court accepted the plea. Order on Change of Plea and Setting, *id.* (D.E. 128). As Steward failed to present this issue on direct appeal, his claim has been procedurally defaulted and relief on this ground is DENIED. *See Bousley*, 523 U.S. at 620; *Hampton*, 191 F.3d at 698. As noted above, the waiver did not extend to claims of ineffective assistance of counsel, which will be discussed below.

(1) The Indictment

Steward first asserts that counsel was ineffective for failing to challenge the indictment. (D.E. 1 at 5.) In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that "defense counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment and that defense counsel's deficient performance caused prejudice." *Winborn v. United States*, 602 F. App'x 298, 300 (6th Cir. 2015) (citing *Strickland*, 466 U.S. at 687). "Unless the petitioner demonstrates both deficient performance and prejudice, it cannot be said that the conviction or sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Goward v. United States*, 569 F. App'x 408, 412 (6th Cir. 2014). "There is a strong presumption that an attorney renders adequate assistance and makes all significant decisions in the exercise of reasonable professional judgment." *Maiyo v. United States*, 576 F. App'x 567, 570 (6th Cir. 2014) (citing *Strickland*, 466 U.S. at 689-90).

The petitioner must establish that his counsel's "performance fell below an objective standard of reasonableness." *Id.* "The issue is whether counsel's performance was so manifestly ineffective that defeat was snatched from the hands of probable victory." *Smith v. United States*, No. 1:11–cv–215–CLC–SKL, 2015 WL 164155, at *2 (E.D. Tenn. Jan. 13, 2015) (quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992)). In order to demonstrate prejudice, he must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Delaine v. United States*, 605 F. App'x 468, 471 (6th Cir. 2015) (quoting *Strickland*, 466 U.S. at 694). A petitioner claiming ineffective assistance of counsel faces a heavy burden. *Pough v. United States*, 442 F.3d 959, 966 (6th Cir.

6

2006). The Court is not required to perform an analysis under both prongs. *Miller v. United States*, 561 F. App'x 485, 490 (6th Cir. 2014).

In his petition, Steward claims that while he was originally charged with first degree murder, this count "disappeared arbitrarily" without a superseding indictment. (D.E. 1 at 5.) As reflected in the indictment, Count Three provided

> [o]n or about December 10, 2009, in the Western District of Tennessee, the defendant—Ricky Lee Stewar[d] III—did in the course of a violation of Title 18, United States Code, Section 924(c), as charged in Count 2 of this indictment, cause the death of a person through the use of a firearm in that **RICKY LEE STEWAR[D] III** committed first degree murder, as defined in 18 U.S.C. §1111(a), that is, the unlawful killing of Captain Dennis Cagle of the Henderson, Tennessee Policy Department, with malice aforethought, such murder being willful, deliberate, malicious, premeditated, and committed in the perpetration of attempted robbery[] [i]n violation of Title 18, United States Code, Sections 924(j)(1).

Redacted Indictment, *United States v. Stewart*, No. 10-10029 (W.D. Tenn. Mar. 15, 2010) (D.E. 2). After pleading guilty to all four counts of the indictment, Petitioner was sentenced on October 4, 2012. Min. entry, *id.* (182). He received life imprisonment for the first degree murder referred to in Count Three. *Id.* The Court is unsure as to the basis for Petitioner's assertion, as this count never "disappeared arbitrarily." (D.E. 1 at 5.) Accordingly, this claim is meritless and is DENIED.

(2) Defense Research/Strategy

Next, Steward argues that counsel did not perform diligent research for the basis of a defense, including failure to have Petitioner submit to a mental evaluation or file for a change of venue. (D.E. 1 at 6.) In response, Respondent provided affidavits from appointed counsel Michael Stengel and Arthur Quinn. (D.E. 10-1, 10-2.) Quinn described the defense team that they assembled in addition to themselves, which included: a fact investigator, a mitigation investigator, a video reconstructionist, a shooting reconstructionist, a ballistics expert, a victim

liaison, a psychiatrist, a psychologist, a neuropsychologist, and a toxicologist. (D.E. 10-2 at 3-4.) Despite his contentions, both attorneys aver that "mental health testing and evaluations were completed." (*Id.*; D.E. 10-1 at 3-5.) Further, they explain that no motions, including a motion to change venue, were filed because the case was settled during the "authorization stage of proceedings," and that based upon their investigation, "there was no factual or legal basis to file [motions to dismiss or to suppress.]" (*Id.*) Any motion to change venue would have been premature based upon the timing of the plea arrangement. (*Id.*)

The affidavits of the attorneys reflect the depth and the extent of their pretrial preparations, including the hiring of numerous experts. (*See* D.E. 10-1; 10-2.) There is a "strong presumption that an attorney renders adequate assistance and makes all significant decisions in the exercise of reasonable professional judgment." *Maiyo*, 576 F. App'x at 570. Petitioner has provided no evidence, other than his own self-serving allegations, that testing was not conducted. Further, he fails to allege any actual prejudice even if he had not been evaluated. Accordingly, Steward's motion for resentencing based upon these claims is DENIED.

(3) Plea Colloquy

Petitioner also asserts that counsel was ineffective for failing to object during the plea colloquy after Steward responded he "did not remember" an event. (D.E. 1 at 8.) During the change of plea hearing, the following occurred:

> THE COURT: Okay. Now, before coming here today have you taken any type of medication or any other drugs that would affect your understanding of these proceedings?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Do you understand what we're doing here today, sir?
>
> THE DEFENDANT: Yes, sir.

THE COURT: Now, have you had sufficient opportunity to discuss this matter with your attorneys, sir?

THE DEFENDANT: Yes, sir, I have.

THE COURT: Are you satisfied with their advice and representation given to you in this case?

THE DEFENDANT: Yes, I am.

….

THE COURT: Now, having gone over those rights with you, Mr. Stewar[d], is it still your intention to enter a plea of guilty to Counts 1, 2, 3 and 4 of this indictment?

THE DEFENDANT: Yes, it is.

THE COURT: Have you seen a copy of the indictment, Mr. Stewart?

THE DEFENDANT: Yes, sir, I have.

THE COURT: Have you had a chance to review it and discuss it both with Mr. Stengel and Mr. Quinn?

THE DEFENDANT: Yes, I have.

….

MR. STENGEL: Judge, before you proceed with questioning Mr. Stewar[d], we need to put on the record, and this is part of our discussions with the government, but the record needs to reflect, and the court needs to be aware, that Mr. Quinn and I have had Mr. Stewart evaluated by both medical doctors and mental health professionals, personnel, and that he has been diagnosed with amnesia. He can admit the facts stated, but due to the amnesia he cannot describe anyone else's role or non-role in the events of December 10th, 2009. This has been discussed with the government. It is part of his plea agreement. It has been discussed repeatedly with Mr. Stewar[d]. And as a matter of fact, it has been discussed with Mr. Stewart in private with his counsel within the past hour. Isn't that correct, Mr. Stewar[d]?

THE DEFENDANT: Yes, it is.

MR. STENGEL: So we'd like the record to reflect that as part of the basis in fact.
….

THE COURT: All right. Mr. Stewart, is the information provided, the factual information provided by Mr. Ivy with regard to your involvement in this matter, as well as your background, the background information Mr. Ivy has related, is that information correct, sir?

THE DEFENDANT: Well, I'd like to answer it this way. As far as my background goes, yes. It's pretty obvious I was there at Save-A-Lot. I don't remember anything about the robbery, so.

THE COURT: That's not what I understood Mr. Stengel—Mr. Stengel indicated. I understood that he did not recall what other people's involvement was. His own—

THE DEFENDANT: Well, the robbery—the robbery, period. I mean, I just—I don't—It's just that simple. I don't—don't recall what happened. I can't recall this happening. I woke up in the hospital. Okay. To this—that's just the truth. What can I say?

MR. STENGEL: If I might ask a couple of questions, Your Honor?

THE COURT: Yes, sir.

MR. STENGEL: You heard Mr. Ivy state the facts, correct, Mr. Stewar[d]?

THE DEFENDANT: Yes.

MR. STENGEL: And you and I reviewed that statement of the facts earlier this afternoon, correct?

THE DEFENDANT: Yes.

MR. STENGEL: And prior to this afternoon, you and your lawyers, both Mr. Quinn and I, have reviewed the discovery provided in this case with you, correct?

THE DEFENDANT: Yes.

MR. STENGEL: And you have seen various videos, correct?

THE DEFENDANT: Yes.

MR. STENGEL: And you have seen pictures?

THE DEFENDANT: Uh-huh (affirmative response). Yes.

MR. STENGEL: All related to this robbery of this Save-A-Lot, correct?

THE DEFENDANT: Yes.

MR. STENGEL: And you're aware of interviews being conducted of witnesses of the Save-A-Lot, correct?

THE DEFENDANT: Yes.

MR. STENGEL: And you have reviewed medical records related to people who were at the Save-A-Lot on December 10th, of 2009—

THE DEFENDANT: Yes.

MR. STENGEL: —correct? And do you agree that you entered the Save-A-Lot on December 10th of 2009?

THE DEFENDANT: Yes.

MR. STENGEL: That you got cash from the office and the cash—

THE DEFENDANT: Yes.

MR. STENGEL: —register?

THE COURT: Wait, wait. Let him finish his questions, Mr. Stewar[d].

MR. STENGEL: You got cash from the cash register and the office cash box?

THE DEFENDANT: Yes.

MR. STENGEL: And that you had a gun?

THE DEFENDANT: Yes.

MR. STENGEL: And that you fired that gun?

THE DEFENDANT: Yes.

MR. STENGEL: And that Captain Cagle was hit by your shot?

THE DEFENDANT: Yes.

MR. STENGEL: And that Captain Cagle died as a result of that shot?

THE DEFENDANT: Yes. (Attorney/attorney conference.)

MR. STENGEL: And that you have no knowledge of how you got to the Save-A-Lot that day?

THE DEFENDANT: Yes.

MR. STENGEL: And that you have no knowledge of whether anybody was— went with you?

THE DEFENDANT: Yes.

THE COURT: Any additional questions?

MR. STENGEL: That's all that I would have, Your Honor.

THE COURT: Okay. So, Mr. Stewar[d], you're indicating, based upon responses, or the questions that Mr. Stengel has asked you, you are admitting to those responses and to those facts; is that correct, sir?

THE DEFENDANT: Yes. Yes, I am.

THE COURT: Is there anything that Mr. Ivy has—other than anyone else who may have—may have mentioned anyone else's name, but is there anything else with regard to your actions or your involvement that you wish to correct or change or alter in any respect?

THE DEFENDANT: No.

….

THE COURT: Mr. Stewar[d], the court has advised you of your right to a trial and your other rights in connection with this matter. The court finds that there is an independent basis in fact for your plea. And I am going to, first of all, ask you if you are, in fact, pleading guilty to Count 1 of this indictment, which charges you with aiding and [a]betting in the obstruction, delay in affecting commerce by attempted robbery of the Save-A-Lot grocery store in Henderson, Tennessee, a business that's engaged in interstate commerce, on December the 10th of 2009. Are you pleading to that count, please, sir?

THE DEFENDANT: Yes.

THE COURT: All right. Are you pleading to that count because you are, in fact, guilty of that offense, sir?

THE DEFENDANT: Yes.

THE COURT: Are you also pleading guilty to Count 2, which states on December 10 of 2009, again, aided and abetted by Ms. Steward, that during and in relation to a crime of violence, that is attempted robbery affecting commerce, in violation of 18 United States Code Section 1951, that you knowingly used, carried, brandished and discharged a firearm, in violation of 18 United States Code Section 924(c)(1) and 2. Are you pleading guilty to Count 2, which I just reviewed with you, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Are you pleading guilty to that count because you are, in fact, guilty of that offense, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Count 3 states, charges that on December 10th, again, of 2009 in this district, that you did, in the course of a violation of 18 United States Code Section 924(c), as charged in Count 2 of the indictment, caused the death of a person through the use of a firearm, that you committed first-degree murder, as defined in 18 United States Code Section 1111(a), that is the unlawful killing of Captain Dennis Cagle of the Henderson, Tennessee Police Department, with malice aforethought, such murder being willful, deliberate, malicious, premeditated, committed in the perpetration of attempted robbery, in violation of 18 United States Code Section 924(j)(1). Are you pleading guilty to that count, sir?

THE DEFENDANT: Yes, sir.

THE COURT: And are you pleading guilty to that count because you are, in fact, guilty of that offense, sir?

THE DEFENDANT: Yes, sir.

THE COURT: And finally, in Count 4, which charges you with being a felon in possession of a firearm, between April 6th of 2009, and December 10th of 2009, again, having been a previously convicted felon, that you possessed a firearm, that is that Charter Arms Model Bulldog Pug, .44 special caliber revolver, in violation of 18 United States Code Section 922(g.) A Firearm that has been shipped and transported in interstate commerce, that is it had been manufactured in some other state other than Tennessee and possessed by you during the dates alleged in the indictment. Are you pleading guilty to that count, which is Count 4 of the indictment, sir?

THE DEFENDANT: Yes, sir, I am.

THE COURT: And are you pleading guilty to that count because you are, in fact, guilty of that offense, sir?

THE DEFENDANT: Yes.

THE COURT: All right. Mr. Stewart, the court finds that you are freely and voluntarily pleading guilty to Counts 1 through 4 of the indictment. That you've acknowledged your guilt, and I am going to accept your plea and enter a judgment of guilty based upon that plea.

Transcript of Change of Plea, *United States v. Stewart*, No. 10-10029 (W.D. Tenn. Mar. 15, 2010) (D.E. 144).

After extensive questioning as to Steward's memory and the facts underlying the charges, the Court found that he freely and voluntarily pleaded guilty and that there was a factual basis for his change of plea. (*Id.*) As reflected above, counsel ensured that Petitioner was questioned at length concerning his amnesia on the night of the robbery of the Save-A-Lot and the murder of Captain Cagle. (*Id.*) In his Petition, Steward fails to provide any reasonable basis for prejudice that resulted in counsel failing to object during the change of plea or any explanation as to how counsel behaved deficiently. Both the Court and counsel made sure that Petitioner understood and freely agreed with the facts presented by the Government. Accordingly, this claim is meritless and is DENIED.

(4) Failure to Request Suppression Hearing

Steward further argues that counsel was ineffective for failing to request a suppression hearing "based on [the] ambiguous indictment." (D.E. 1 at 9.) Although Petitioner alleges there was an inherent issue within the language of the indictment as some counts charged "both general and specific intent," he provides no legal basis for his argument. As counsel explained in their affidavits, they "discussed the intent element, specifically explaining [to Steward] that, due to the charges, the government was looking to obtain a conviction by establishing that he intended to rob the Sav[e]-a-Lot, not that he intended to murder anyone." (D.E. 10-1 at 5.) Petitioner fails to provide any basis as to how counsel behaved deficiently or to overcome the "strong presumption that an attorney renders adequate assistance and makes all significant decisions in the exercise of reasonable professional judgment." *Maiyo*, 576 F. App'x at 570. Accordingly, relief based upon this ground is DENIED.

### (5) Incompetence

Steward also contends that counsel was ineffective for failing to investigate whether he was incompetent, rendering him unable to face trial or plead guilty. (D.E. 1-1 at 1.) As discussed *supra*, however, trial counsel had mental testing and evaluations undertaken on Petitioner, which were apparently normal, and the Court found Steward's guilty plea to be knowingly and freely made after extensive questioning. *Supra* pp 8-14. Accordingly, this claim is meritless and is DENIED.

### (6) Bad Faith

Finally, Petitioner avers that counsel acted in bad faith. However, Steward fails to point to any specific instances, but rather poses rhetorical questions to the Court and strings together legal quotes without any citation to legal authority. (D.E. 11 at 3.) The lack of any foundation for this claim makes it abundantly clear that he has failed to demonstrate either prejudice or deficient performance. Accordingly, relief based upon this ground is DENIED.

## IV. Conclusion

Because the issues presented by Steward are without merit or procedurally defaulted, they are DISMISSED. The Clerk of the Court is DIRECTED to enter judgment for the United States.

## V. Appeal Issues

Twenty-eight U.S.C. § 2253 requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate. The COA must also indicate "which specific issue or issues satisfy" the required

showing. 28 U.S.C. § 2253(c)(3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted). A COA does not require a showing that the appeal will be successful. *Id.* at 337. Courts, however, should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (per curiam).

In this case, for the reasons previously stated, the issues raised by the Petitioner lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Rule 24(a) of the Federal Rules of Appellate Procedure. *Id.* at 952. The Rule provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, the Rule also provides that, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons it denies a COA, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Rule 24(a), that any

appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is DENIED.[3]

       IT IS SO ORDERED this 22nd day of July 2016.

                                         s/ J. DANIEL BREEN
                                         CHIEF UNITED STATES DISTRICT JUDGE

---

[3] If Petitioner files a notice of appeal, he must also pay the full appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.